Mr. Bennett, before I start your time, I think I should, in the interest of full disclosure, let you know that I came down to breakfast this morning and started my breakfast at my hotel when Mr. Blakely also came down to breakfast. I did say hi to him. I said hi to his lovely wife. I gave him the business about drinking coffee. Let's see, what else did I do? I don't know. But I didn't talk about this case, nor did I have any other conversation with him that would even indicate anything about this case. But I just wanted you to know, I don't think that's enough to DQ myself, but I want you to know, in the interest of full disclosure, exactly what happened. Well, Your Honor, I can fully disclose that I did not see Mr. Blakely this morning. And that you did speak to me before the court, but you I did come out and shake your hand. That is right. I like doing that, because I think it says to you that we really appreciate argument from good counsel who are there with us. But I didn't want you thereafter to hear in some colloquy you had with somebody I don't know about, oh, the judge had breakfast with Blakely, because we didn't have breakfast. He sat at one end, and I sat at the other end, but I did say hi. And I did remark about his wife drinking coffee, so. Well, that's appreciated, Your Honor. All right. May it please the court, my name is James Dodd Bennett. I'm here to represent the petitioner in this consolidated petition for review. And I'd like to reserve five minutes for rebuttal. Okay. First issue in this case, actually there's three issues in the case, but the first one is which delegate has the jurisdiction over a second motion to reopen after there's entry of an absentia order in a deportation proceeding? And second issue is going to be if the court finds that the BIA had jurisdiction, which we maintain it does not, then we would reach the issue of tolling and the question of whether or not there has to be Lozada compliance in this particular proceeding with this particular attorney, our former attorney, I should say. And finally, the last issue is whether change country circumstances under Malti were properly addressed by the board. So, initially, I would like to turn to the threshold issue of jurisdiction. Would you agree with me on the jurisdiction issue that the petitioner filed a motion to reopen in or about December 2006 that was filed to rescind the inabstentia removal order? Absolutely, that's a conceded fact. And you'd agree that the motion was denied by the IJ? Yes. And that it was thereafter appealed to the BIA and the BIA dismissed the petition? Yes. And after the BIA dismissed the petition, it was appealed here? Yes. And we denied the petition? Yes. At that point, if I look at HCFR 1003.23, I see the petitioner can have only one Yes, Your Honor, that's the issue is that the BIA is proceeding under, on the first  But give me a minute. I'm trying to figure out why that wasn't the last decision on the merits, and therefore jurisdiction was properly in the BIA. Yes, Your Honor, that's the issue is that the BIA is proceeding under, on the first motion, second motion to reopen file by Singh, proceeding under 122.9. But get me past that, because it seems to me if the BIA had jurisdiction as to the first motion, and they determined what to do with it, and then it was appealed here, and we sent it back to them saying it's denied, they have jurisdiction thereafter, based on the regulations, because there's only one petition to reopen. And so if you're going to have any others, and they have the case, because you appealed it, not you, but somebody, that therefore it's vested with them for the second and the third. And I want to know what your best argument is that it isn't. Well, the difference, well, the issue really is what controls the regulation or the statute. The statute, 1229AB5 is the absentia statute. That's the statute that the BIA invokes for its jurisdiction to consider the appeal from the denial of the second motion to reopen. And on that basis, the only person that has jurisdiction over that motion would be the immigration judge on the clear terms of the statute. So the regulations which the BIA has implemented all refer back to removal proceedings. So there's no contemplation by the BIA that has jurisdiction over a second motion to reopen an absentia. Second issue, the time limitation would be qualified by whether there was a basis under this circuit's precedence for an exception. In other words, a tolling of time and a tolling of numbers is possible where you show ineffective assistance of counsel or several other factors. And that's exactly what occurs in this case. Because of the ineffective assistance of counsel was my best authority, because I went through the authorities and I've even gone through the authorities that you've suggested here. And the honest truth is, once having it gone to the BIA on appeal, once having come here and now back to the BIA, I see no way to get it to start again with the I.J. I didn't find any statutory authority for it. I didn't find any regulatory authority for it. This is not another this is another motion about the in absentia decision, which doesn't seem to me to have any way to get back to the I.J., even though you can cite me those regulations you did. Well, in addition to that, there is authority outside of this circuit, which is persuasive and not binding on this Court. And that would be Ankar Singh, the only court that's ever decided this issue. Where there is a second motion, where there are grounds for a second motion to reopen in absentia, jurisdiction has to vest with the immigration judge based on the clear terms of the statute. That Fifth Circuit case was very clear. There is no other authority that I've been able to find that says to the contrary. Pervaiz v. Gonzalez, which is cited in the brief, which is a Seventh Circuit case, says that the tolling provisions and time provisions, which are followed by this Court in the other form of motion to reopen, 12A.C.7, applies to motions in absentia as well. And excuse me, yeah, denials, orders to reopen, yeah, exactly, I'm sorry, Your Honor. Different, yeah. So with those two authorities, what I'm going to ask this Court to do is apply those very same concepts to this particular proceeding, which has never been done in this circuit as far as I know its first impression in this circuit on that issue. So the question becomes, the statute controls. If the statute controls and the regulations, there's a catch-all regulation for sua sponte reopening, that would go to attacking the order on the motion appeal. It doesn't go to the final order of deportation. And to get to that final order of deportation, your only avenue is going to be through the statute back to the immigration judge. And that's where the BIA got it half right, half wrong. They said, okay, this motion is really an absentia motion, but we have jurisdiction in the first instance under the regulation that the Court cited. That's wrong. What they need to do is follow the statute. The statute says immigration judge. All right. I understand your argument. Do you want to move to your other arguments then? Yes, Your Honor. Just briefly, I believe that if the jurisdictional issue is decided, we don't need to reach the other issues. I understand. But if I don't agree, or I put it way out there, what I was thinking, what do I do with the other issues? First issue would be the issue of whether or not the following would work. Your Honor, now we're a matter of the motions to reopen, right? Yes. And the motions to reconsider. And the standard of review is? Abuse of discretion. All right. So abuse of discretion. So let's skip the matter, the failing to comply with matter of Lozada. Let's skip that one. That might even be legal to some extent. But let's look at Singh did not show diligence in filing his motion to reopen. In that particular situation, it seems to me we have to find is an abuse of discretion, what the BIA did. What does that mean to you, abuse of discretion? I mean, what does it mean under the statutes? What have I got to find the BIA did to abuse its discretion? Well, the BIA says that. Not what they said. What is the standard by which I view their decision? Abuse of discretion. What does that mean? To grant a motion to reopen that's discretionary with the board under those circumstances, or with the immigration judge for that matter. I understand. There's still abuse. What does it mean? It seems to me that to find an abuse of discretion, I've got to find there's absolutely no way, well, not absolutely, but practically it's irrational what the BIA did. There's nothing in the record to support what they did. It's got to be pretty serious in those situations for me to suggest that they abused their discretion. Would you agree? Yes, Your Honor. But what I would like the court to understand is the context which is carried through in Mr. Singh's unrefuted declaration. He's hired this particular attorney to represent him not just in immigration proceedings, but also in a criminal proceeding, and he's got a very serious problem. He's a fugitive from justice, and he's seeking out advice on two issues, not just immigration. The attorney turns around and says, give me $75,000. I'll take care of the criminal case. We'll do that first. Don't show up in the immigration court. So he follows that advice. The motion to reopen, which the BIA focuses on the declaration in the first motion to reopen, is that when he knew that it was – if he knew that the declaration was false, that he was being told to sign by his attorney, then that should be the trigger when he was put on notice. I think we have to look at the total context in which this is all occurring. He's relying on this attorney to get things straightened out for him. Three years go by. What does he do? He takes a polygraph. He takes his – he tells him the FBI is looking for him, and that's about it for $75,000. For the immigration proceeding, he just tells him not to show up. Finally, the petitioner gets competent legal advice, surrenders in 2009, sent to the CDC, does his prison term. Again, we have another tolling period here. He's in custody. And finally, when he's released, the agency itself puts him in a new removal proceeding, and as – which is, despite disclosing his A number and his other aliases. My worry is this, and I appreciate your argument, but what I've got to find, under three prongs it seems to me, three issues, if and when a reasonable person in a petitioner's petition would suspect the specified fraud or error underlying his motion to open, two, whether the petitioner took reasonable steps to investigate the suspected fraud, and three, when the petitioner definitely learns of the harm or learns of the vital information bearing on the existence of his harm. If I take those three issues, and I look at this diligence, determination, it doesn't seem to me that the rationale the BIA used can be illogical. Well, it may not be all facts underlying it, which is what I've got to find for an abuse of discretion. Now, good lawyers – I've made these arguments many times in Idaho – we may see it a bit like that. I can't undo it on appeal, even if I would agree with you. That's why I'm saying focus in on what they said, which was totally irrational, totally unreasonable. Well, as far as putting Mr. Singh on notice, in the context of that representation, saying that his signing a declaration which has false statements in it can't be the trigger to put him on notice. Why not? Because he's still relying on this attorney to get his criminal case straightened out before he even deals with anything in immigration, or at least that's what he's being told. Was that December of 2006? That is, approximately when the declaration was signed. Okay. So that – I appreciate that. That's what I'm focusing on. That period of time until 2009, when he – when your position is that a tolling period started because he surrendered. Right. Okay. So I'm listening. You've got my attention. All right. So he's relying on him. The surrender is 2009. Up to that point, he's being represented by the very same attorney as I previously stated. Right. He's relying on that advice. And all of a sudden, he's being told, okay, surrender by a different counsel. What about the period? Now, you just skipped over December 2006 until 2009 surrender. But what about that period of time when we're talking about diligence? Why should I not count that time? Because this case is going through the appellate process, as was previously outlined by the Court. And Mr. Singh, as far as he's concerned, is everything seems to be going okay, and he – my case is going to be resolved with the – and the criminal realm as well. Relying on the fraudulent affidavit he had signed. Well, he's been told to sign it. This is the way we do it. You've got to do it.  Well, I'm not trying to be glib. But during this period of time when you – when you said, counsel, that he's relying on, gee, my case is going to be okay, he's relying on that affidavit, right? The one he signed in 2000 – December of 2006. Is that correct? He's relying on something more profound than that. He's relying on the fact that don't show up in immigration court, and then we'll clean it up later. That's the only reason he's in trouble in the first place, is the attorney tells him don't show up. Well, let me ask about that, because the attorney said don't show up because they might arrest you if you show up. And, of course, that does happen. But was that not – wasn't he facing any criminal problems then, or was that the same thing that ultimately resulted in him being incarcerated from April 29th of 2009 to February of 2011? Is that the same charge? So that wasn't a bogus piece of advice, probably. Well, it's bogus in the sense that he ends up with a deportation order. I mean, you've got a complex interrelation between criminal and administratively civil proceedings. And he's being told you've got to sacrifice one for the other. So he's following that advice. And to say that he's on – he may be on notice that things are probably not – you know, this might not be the way I would do it, maybe, but I'm being told by this I don't know if that answers your question. Thank you. We've let you go over, and we'll give the government their chance. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. John Blakely on behalf of the Attorney General of the United States. Your Honors, I think it's important here to start with the statute. And when the Fifth Circuit addressed this statute on motion to reopen in absentia orders, it specifically notes that the statute does not specify whether the motion should be filed with the immigration judge or the board. That was left open, and that was left to the Department of Justice to provide its regulations. And the Justice Department has done that with the regulations. The first motion to reopen in in absentia order shall be done with the immigration judge. Subsequent orders, once the decision does get to the board, subsequent motions to reopen are filed with the board. That's in accordance with the regulations, and there's no problem been found with those regulations. Now, you did hear your good opposition's argument as it relates to that. How do you respond? Well, first, it's incorrect that the statute requires that it be filed with the immigration judge. That's the first point. The second point is that the regulations specifically specify, and it is the board that's given the authority to interpret the statute, it's the board that has specified that it has authority to reopen any case in which it has rendered decision. And in this case, they rendered decision following the 2006 motion to reopen. And so once the board issued that decision on the appeal of the denial of the motion to reopen in absentia order, they then had authority from there forward to respond to any motion to reopen that was filed. Now, the decision that the Singh decision in the Fifth Circuit actually is far more because in that Singh decision, they say specifically, once you file that motion to reopen with the immigration judge and then it has been appealed to the board, you've exhausted your motions to reopen that in absentia order. In other words, he's done, period, and he wouldn't have been able to file any of these motions. I think it's also important to note here that even Petitioner has indicated that when he was filing, he was not acting under the in absentia order statute. He was acting under the conventional motion to reopen regulations. In our brief, we cite several of those pages. It's on page 24 of our briefs, page 32, 35, 421, 451, 454, 539, and 541. Those are all sites. Is this a novel issue for the Ninth Circuit? Is this a new issue, or do we have enough case law to really go where you're going? I think it's new in this context, Your Honor. Whether the board has authority to reopen a case, certainly this Court has addressed that. And as far as whether the board can make the rules for where a motion should be filed, yes, this Court has addressed that. So I don't think that there's – but there's no case law that would conflict with what the board has done in this case. Are you familiar with Yucita Hernandez? With which Hernandez? The case Yucita Hernandez. Are you familiar with that case? The case you authored, if I remember correctly. Yes, I'm familiar with that. And I think it's important to recognize the difference between the way you described that as a claims processing rule was that it was applied in a way that restricted the board's authority to act. And just like in Irigoyen-Briones, it was the same way. The board acted in a way that said we don't have authority to reopen here. This is a different situation. This is the board saying we do have authority back. Right. And so there's no issue here of whether Mr. Singh gets an opportunity to argue change country conditions. He gets to argue ineffective assistance. He gets to argue due diligence. And whether he's complied with matter rosati. He's had the opportunity. There's no due process issue of whether something was left unaddressed by the agency. Here the board said no, the IJ doesn't have jurisdiction. So it didn't stop there. It said we're going to treat this as a motion to reopen filed with the board and we're going to address it. And so they addressed it. And they found appropriately and there was no abuse of discretion in the decision that Mr. Singh failed to act with due diligence here. And looking at the timeline, even if you say in 2009 that that was the first time that he really realized that there was something wrong with his attorney, which is kind of bizarre. But in 2009 he knew. Well, he didn't file his first motion to reopen until 2011. Actually, I think about seven or eight months after he was released from prison. And I. Opposing counsel argues that a tolling period should start there because of the incarceration. Is that wrong? Or are you relying on the seven or eight months that passed after he got out of prison? What's your position? The board here treated it as starting as soon as he knew that he had a fraudulent attorney. As soon as he knew that, he had cause to go to another attorney and find out if this was the right approach. Not necessarily just when his advice was don't appear for the hearing, which probably wasn't very good advice. But it wasn't necessarily at that point. But the moment that his attorney placed in front of him an affidavit and said, I want you to sign this and lie to the court, he knew at that point that he had a fraudulent attorney. And then shortly after that, he obtained a negative result in front of the immigration judge. And very shortly after that, another negative result before the Board of Immigration Appeals. Most reasonable people would have been on notice at that point that they needed to go talk to some other counsel, that they couldn't follow the advice of this individual. And then if you. So that's 2007, right? Yes, Your Honor, back in 2007. Okay. Forgive the interruption. But all right. That's your position is at that point a reasonable person would have been talking to another lawyer. Yes, Your Honor, that's correct. Okay. And so we disagree with his suggestion that it's 2009. But even if it is 2009, then you continue to have problems, because the motion to reopen was not filed until late 2011. So in addition, the Board appropriately addressed the matter of Lozada requirements and appropriately addressed change country conditions. Our arguments are in the brief. The Board, there's no evidence here that the Board abused its discretion. There's nothing arbitrary or capricious about its decision. And there's certainly nothing in the record to suggest that this Court should do anything but deny the petition for review. So unless there are other questions, I'll rely on our brief. Thank you very much. If you want 30 seconds, Mr. Bennett, I'll give it to you, even though you went over. Thank you, Your Honor. Just briefly, the idea that the Fifth Circuit decision is an outlier and somehow somewhat sugenerous, sugenerous rather, they get the statute right. They look at the statute, and this is a motion to reconsider as the third filing. And that's when the Board says, look, you filed this motion, this previous motion, and we're going to call it a 1229C7, and you should have filed this motion, that motion downstairs as an abstention order. So they're real clear on where you need to go with this stuff, with this kind of filing on the second one. All right. Thank you. You've had your 30 seconds. We've got a long calendar today, and we've got a conference after that, so I'll stop. We will, this case is then submitted for decision, and we will call Zimmelman versus, this is, these are cases 1270850, 127156, 127254, and 127349. They are all submitted.
judges: Piersol, SMITH, CHRISTEN